THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* H. ROBERT BEGUELIN, Appellant.

Third Department, November 13, 1918.

**Ejectment — action by State to recover possession of land — when defendant estopped from asserting title — practice — application for leave to serve supplemental answer.**

Where, in an action by the State for ejectment, it appears that seven years prior to the entry of the defendant into possession, the State recovered a judgment in ejectment against the defendant's grantor, and that the defendant, being confronted with the probability of a similar action against himself, executed, acknowledged and delivered an instrument admitting and conceding the property to be owned by the People of the State, he is estopped from asserting any title to the premises as against the plaintiff, and the court properly denied his motion for leave to serve a supplemental answer alleging that since the commencement of the action he acquired alleged interests in the premises from other parties.

Although the court will not ordinarily on motion determine the merits of a supplemental answer, but will leave the parties to litigate at the trial the questions raised thereby, it is its duty to consider all the circumstances and grant or refuse the application as may be just and proper in the particular case.

H. T. KELLOGG, J., dissented.

APPEAL by the defendant, H. Robert Beguelin, from an order of the Supreme Court, made at the Washington Special Term and entered in the office of the clerk of the county of

Hamilton on the 1st day of April, 1918, denying his motion for leave to serve an amended and supplemental answer.

*Snyder, Cristman & Earl [Charles E. Snyder* and *David E. Snyder* of counsel], for the appellant.

*Merton E. Lewis, Attorney-General [B. H. Loucks* of counsel], for the respondent.

COCHRANE, J.:

The action is ejectment. The proposed supplemental answer alleges that since the commencement of the action the defendant has acquired from the University of Vermont and from other parties alleged interests in the premises involved which he desires to use in defending the action. There is no deed in existence or on record conveying any interest in the property to the University of Vermont, but the basis of the defendant's contention in this particular rests exclusively in recitals in deeds of other property given in the year 1848 by former owners of the property in question to the effect that certain premises which include the premises in question had been theretofore conveyed to the University of Vermont by one of such former owners. This claim of title if good is met on the part of the plaintiff by opposing titles derived from various tax sales occurring at intervals during the last seventy years, the validity of which sales and the deeds resulting therefrom are attacked by the defendant on numerous grounds. The proposed answer, therefore, opens a field of litigation involving innumerable intricate and complicated questions almost staggering in its possibilities. We think, however, the defendant has placed it out of his power to indulge in this carnival of litigation.

He went into possession of the property in the year 1909 under a deed from one Ferris. In the year 1902 the State had recovered a judgment in ejectment against Ferris thereby establishing that he had no title to the premises which he could convey to the defendant. The situation then was that the defendant was confronted with the probability of a similar action against himself. Under these circumstances he executed, acknowledged and delivered an instrument of which the following is a copy: " This is to certify that I am an

occupant of tract or patent Totten & Crossfield's Purchase, township No. 40, Town of Long Lake, County of Hamilton, N. Y. That I occupy the following buildings situate upon said premises: Main building, dining room and kitchen building, cabin and outhouses, which buildings are owned by me. Otherwise I do not own or claim the title to said above described premises or to any portion thereof and that I admit and concede the same to be owned by the People of the State of New York. I further certify that there are no other occupants of said premises. I further certify that my occupancy of said premises is at the sufferance of the People of the State of New York and is not adverse or hostile to the claim of title of the said premises of the People of the State of New York. " Dated *October* 13, 1909.

" H. R. BEGUELIN."

And accompanying the delivery of this instrument was a letter from the defendant as follows:

" I have just returned from a long absence and find your letter and certificate to be signed. I enclose herewith certificate which you will notice I have altered slightly as I do claim to own my buildings. I try to comply in every way with the wishes of the State such as not cutting timber, etc., but feel that in case the State should desire their premises vacated at any time I should have the right to remove my buildings if possible. In signing the paper as it was received, I might also have trouble with my insurance companies. I, therefore, have made the slight alterations, I trust this will be perfectly satisfactory to you. With apologies for the delay which was unavoidable, I am,              Yours very truly,

" H. R. BEGUELIN."

This action was begun in the year 1915 and during all the intervening time the defendant remained in undisturbed possession of the premises. By virtue of the arrangement thus made he secured recognition by the State of his ownership and right to remove the buildings on the premises and temporary immunity from interference with his occupancy which extended over a period of about six years. He is now asserting a title to the premises which he then asserted did not

exist. He then solemnly declared: " I admit and concede · the same to be owned by the People of the State of New York." He now says it then belonged to the University of Vermont and others, and by asking leave of the court .to serve the supplemental answer he is asking the court to aid him in an effort to repudiate the promise and agreement he then made with the State.

The defendant's apology for his present attitude is that the State has not kept faith with him. This position rests on some theory of an understanding that he would acknowledge the title of the State and that the State in return would forever recognize his right to possession. But this theory is entirely untenable in view of the express declaration of the defendant in his agreement of October 13, 1909, that his occupancy was " at the sufferance of the People of the State of New York " and in his letter of the same date " that in case the State should desire their premises vacated at any time I should have the right to remove my buildings if possible." In my opinion the defendant is clearly estopped from asserting any title to the premises as against the plaintiff and whatever discretion exists in the court in determining his motion for leave to serve this supplemental answer was wisely exercised against him. Whether the advantages which he received from his agreement with the State in 1909 were commensurate with the advantages received by the State, is a question of little moment. He made the arrangement intelligently and deliberately as clearly appears. He derived certain advantages which to him at that time seemed adequate. His right to remove the buildings is probably unquestionable and there is not the slightest ·reason apparent why he should be permitted to repudiate the position taken by him in 1909, and from which he has ever since derived an advantage.

Ordinarily it is true the court will not on motion determine the merits of a supplemental answer but will leave the parties to litigate at the trial the questions raised thereby. (*Brewster* v. *Brewster Co.*, 138 App. Div. 139; *Trustees of Presbytery* v. *Westminster Presbyterian Church*, 142 id. 876; *Milliken* v. *McGarrah*, 164 id. 110; *Sand* v. *Borman*, 134 id. 651.) Such is generally the better practice. But that rule rests upon the theory as indicated in *Milliken* v. *McGarrah* · (*supra*) that

generally " the other party cannot be injured " by its applica-
tion.    It is just as true, however, that it is the duty of the
court to consider all the circumstances and grant or refuse the
application as may be just and proper in the particular case.
(*Fleischmann* v. *Bennett,* 79 N. Y. 579, 582; *Spears* v. *Mayor,*
*etc.,* 72 id. 442; *Holyoke* v. *Adams,* 59 id. 233; *Medbury* v.
*Swan,* 46 id. 200; *Park & Sons Co.* v. *Hubbard,* 198 id. 136.)
Here the outcome is inevitable.    The defendant cannot suc-
cessfully interpose the title of the University of Vermont or
any other title against the plaintiff.    He must now stand on
the position he took in 1909 and concede the title of the
plaintiff.    If the motion were granted it would simply con-
stitute an opportunity to the defendant for prolonged  and
troublesome litigation which for the reasons indicated must
necessarily prove fruitless.    The same facts which demonstrate
the ultimate failure of the defense demonstrate at the same
time that such defense should not be permitted.

The order should be affirmed, with ten dollars costs and
disbursements.

All concurred, except H. T. KELLOGG, J., dissenting.

Order affirmed, with ten dollars costs and disbursements.